JOHN ZORN, Respondent, *v.* FREDERICK W. HAAKE, Appellant.

*Trespass — not maintainable against one in possession of the land.*

An action of trespass *quare clausum fregit* cannot be maintained against one who is in the actual, exclusive and adverse possession of the *locus in quo.*

The doctrine that title to the whole of a piece of land and possession of a part gives constructive possession of the whole does not apply where the possession of the *locus in quo* is actually in another.

APPEAL by the defendant, Frederick W. Häake, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Erie county on the 15th day of March, 1893, upon a verdict rendered at the Erie Circuit, and from an order entered in said clerk's office on the 23d day of June, 1893, denying the defendant's motion for a new trial made upon the minutes.

*Stephen Lockwood,* for the appellant.

*Allen & Butterfield,* for the respondent.

DWIGHT, P. J. :

The action was trespass to lands. The parties owned and occupied adjoining lots on the west side of Bailey avenue in the city of Buffalo. Jacob Klein was their common source of title. He took title, in 1867, to the entire front of lots Nos. 51 and 52 of the Buffalo Creek reservation, on the Williamsville road (now Bailey avenue), being, by description, 20 chains 20 links, or 1,353 feet, in length along the west side of Bailey avenue. The strip was bounded on the south by the south line of lot 51 and on the north by the south line of lot 53. The south line of lot 51 was the center line of Clinton street, which crossed the Williamsville road at right angles and Clinton street was sixty-six feet wide ; so that, deducting from the entire length of the strip as given in Klein's deed, one-half the width of Clinton street, his front on Bailey avenue was, by description, 1,320 feet.

In the years 1872, 1873, 1880 and 1881, Klein sold off and conveyed several lots varying from thirty to ninety feet front, all located in succession from the north end towards the south, but in each of the conveyances the description commenced at the south-

east corner of the lot conveyed, which was described as being so many feet from the north line of Clinton street. Thus, of the first lot, conveyed to Johannah Buse, the front line was described as commencing in the west line of the Williamsville road (Bailey avenue) 1,260 feet from the north line of Clinton street, and running north sixty feet, which, according to the description in Klein's deed, would bring it to the north line of the strip, or the south line of lot 53. So, in case of each successive conveyance the width of the lot conveyed was added to that of all the lots previously conveyed, and the sum being deducted from the whole 1,320 feet front, gave the distance from the north line of Clinton street, at which the description began. This, in effect, bounded each lot on the north by the south line of the lot next previously conveyed. The plaintiff's lot was the seventh in the order of conveyance and of consecutive location from the north southward. The six lots previously conveyed had an aggregate front of 350 feet, and the plaintiff's of thirty feet, and, accordingly, the description in his deed commenced at a point 940 feet north from the north line of Clinton street. The next conveyance was in 1881 to one Martin, of a lot ninety feet front, and the description began at a point 850 feet north from the north line of Clinton street. This was the lot subsequently conveyed to the defendant.

The plaintiff took his deed in 1880, at which time there was a fence on the supposed south line of the lot north of him, and he took possession of thirty feet front south of that fence. Within a year or two thereafter he built a fence part way through from the front, on his supposed south line, thirty feet south from the fence above mentioned, and within a year or two from the same time. Martin, the defendant's grantor, completed the fence through to the rear of their lots on the same line. The plaintiff testifies that he built his part of the fence on the line which his grantor pointed out to him as his south line, and that he and the defendant's grantor agreed on the division of the fence between them substantially as it was built by them at this time.

The defendant took his title in 1890, taking possession up to the line of the fence last above mentioned. In January, 1891, he commenced to excavate clay for bricks in the north part of his lot near the fence. He did so without objection from the plaintiff, until the

latter became alarmed for the safety of his fence, and objected to his coming nearer the line. Upon the defendant's persisting, the plaintiff procured a surveyor to locate the line accurately, and was as much surprised as the defendant was to learn that the point 940 feet north from the north line of Clinton street, which, according to the description in both deeds, was the plaintiff's southeast and the defendant's northeast corner, fell nine and one-fourth feet south of the fence between their lots, but he proceeded thereupon to bring his action for damages for breaking and entering his close and taking and carrying away the soil of his lot.

That action, we suppose, could not be maintained on the facts stated, for want of possession in the plaintiff, and the objection was taken by the defendant in his motion for a nonsuit on that ground. The action of trespass *quare clausum fregit* has always been regarded as a possessory action, and one which could be maintained only by the party in possession. (4 Kent's Comm. 120, note d; *Campbell* v. *Arnold*, 1 Johns. 511; *Tobey* v. *Webster*, 3 id. 468; *Stuyvesant* v. *Dunham*, 9 id. 61; *Frost* v. *Duncan*, 19 Barb. 560.) It is true that the possession necessary to the maintenance of the action need not in all cases be an actual possession. As was said by Chief Justice NELSON in *Holmes* v. *Seeley* (19 Wend. 507): "The plaintiff must have the actual possession at the time, or, what is deemed equivalent, a possession which the legal title draws after it." But the legal title does not draw after it the possession of land which is at the same time in the actual, exclusive and adverse possession of another. In *Van Rensselaer* v. *Radcliff* (10 Wend. 639) it was held that a party having title to lands, though not in the actual possession thereof, may maintain trespass against another who is not, himself, in the actual possession of the premises. The language of Judge SAVAGE, at pages 652 and 653, was: "The possession of the plaintiff was sufficient against a stranger; he showed title to lands which were not in the possession of any other; he was, therefore, in possession, as, in such cases, the possession follows the title." (See, also, *Wickham* v. *Freeman*, 12 Johns. 183, 184.) The cases cited by counsel for the plaintiff, to the effect that title to the whole and possession of a part give constructive possession of the whole, do not apply to cases where the possession of the *locus in quo* is actually in the defendant. In *Munro* v. *Merchant* (28 N. Y. 9) the ques-

tion was what form of holding was sufficient to constitute an adverse possession in the plaintiff, but here was adverse possession in the defendant. It is impossible that two persons should be in possession of the same piece of land at the same time, unless they are joint tenants or tenants in common.

In the case of *The Congregational Society* v. *Baker* (15 Vt. 119), it was held that, to maintain trespass *quare clausum fregit,* the plaintiff must have either title or exclusive possession, and there must be no adverse possession in any other person. Here the actual, exclusive and adverse possession of the defendant was unquestioned. The principles involved in this discussion were well stated, by the Supreme Court of North Carolina, in *Dobbs* v. *Gallidge* (4 Dev. & Batt. 68) as follows : " The action of trespass *quare clausum fregit,* being a remedy for injury to the possession, cannot be maintained by him who had not possession when the wrong was done. But where there is no actual possession in another, the law adjudges him in possession who has the property, and this possession, which is usually called constructive possession, is fully sufficient to maintain the action."

The answer here given to the plaintiff's present action renders it unnecessary to consider the questions which might have properly arisen in the case, had the action been one asserting title in the plaintiff, and claiming to recover possession of the defendant.

The judgment and order appealed from must be reversed and a new trial granted, with costs to abide the event.

LEWIS, HAIGHT and BRADLEY, JJ., concurred.

So ordered.